UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DORIS BRIGNAC,**<br>    Plaintiff<br><br>v.<br><br>**TIMOTHY ROUSSEL, ASHLEY POCHE, CHANTAL WAGUESPACK, JENNIFER RIZZUTO, AND ST. JAMES PARISH,**<br>    Defendants. | **CIVIL ACTION NO.:**<br><br><br>**JUDGE:**<br><br><br><br>**MAGISTRATE:** |

## COMPLAINT AND JURY DEMAND

Doris Brignac ("Brignac" or "Plaintiff") files this Complaint and Jury Demand pursuant to 42 U.S.C. § 1983 and seeks redress for the violation of her First Amendment rights under the U.S. Constitution by the above-named defendants.

### I. INTRODUCTION

1. In 2014, the United States Supreme Court clearly established that a public employee's sworn testimony, compelled by subpoena, constitutes speech as a citizen on a matter of public concern and is accorded First Amendment protection. See *Lane v. Franks*, 134 S.Ct. 2369, 189 L.Ed.2d 312 (2014).

2. Plaintiff brings this claim for retaliation under 42 U.S.C. § 1983 because she exercised her First Amendment rights at a grand jury proceeding regarding public corruption in St. James Parish. The day after Plaintiff testified before the grand jury, two of the above-named defendants (Timothy Roussel and Ashley Poche) were indicted. Defendants retaliated against Plaintiff for exercising her First Amendment rights by subjecting her to undeserved criticism and write-ups and ultimately terminating her employment.

## II.  THE PARTIES

3. Plaintiff is an individual of the full age of majority and a resident of St. James Parish, Louisiana.  She was employed by St. James Parish for almost eleven (11) years.  At the time of her grand jury testimony and subsequent termination, her job title was Accounting Clerk III, a position in the St. James Parish Department of Finance.

4. Defendant Timothy Roussel ("Roussel") is an individual of the full age of majority and a resident of St. James Parish, Louisiana.  At the time of the filing of this Complaint, Roussel is the Parish President of St. James Parish and the subject of an indictment for six (6) counts of malfeasance in office in the 23rd Judicial District Court for the Parishes of Ascension, Assumption, and St. James.  In this Complaint, Roussel is named in his individual capacity only.

5. Defendant Ashley Poche ("Poche") is an individual of the full age of majority and a resident of St. James Parish, Louisiana.  At the time of the filing of this Complaint, Poche is the Assistant Director of Finance for St. James Parish and is the subject of an indictment for two (2) counts of malfeasance in office in the 23rd Judicial District Court for the Parishes of Ascension, Assumption, and St James.  In this Complaint, Poche is named in her individual capacity only.

6. Defendant Chantal Waguespack ("Waguespack") is an individual of the full age of majority and a resident of St. James Parish, Louisiana.  Pursuant to Parish President Roussel's Executive Order 16-5, Waguespack was named third in line of succession to Parish President Roussel. At the time of the filing of this Complaint, Waguespack is the Director of Finance for St. James Parish. In this Complaint, Waguespack is named in her individual capacity only.

7. Defendant Jennifer Rizzuto ("Rizzuto") is an individual of the full age of majority and on information and belief is a resident of St. James Parish, Louisiana. During the relevant times herein, Rizzuto was the Personnel Manager for St. James Parish. In this Complaint, Rizzuto is named in her individual capacity only.

8. Defendant St. James Parish (the "Parish") is a local governmental subdivision as defined by Article VI, Section 44 of the Louisiana Constitution of 1974. It operates under a home rule charter pursuant to Article VI, Section 5 of the Louisiana Constitution of 1974.

9. Roussel, Poche, Waguespack, Rizzuto, and the Parish are collectively referred to herein as "Defendants." Each has acted under color of law with respect to the events described herein.

### III. JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in St. James Parish and a substantial part of the events or omissions giving rise to this claim occurred in St. James Parish.

### IV. STATEMENTS OF FACTS

12. Brignac worked for the Parish from November 13, 2006 until Defendants terminated her employment on September 20, 2017.

13. During her tenure at the Parish, Brignac worked as an Administrative Assistant in the Finance Department, as a Business Manager Trainee/Utilities Department

Office Manager, and as an Accounting Manager I in the Department of Human Resources. In January 2016, Roussel transferred Brignac back to the Finance Department.

14. In the Finance Department, Brignac was supervised by Poche (Assistant Director of Finance) and Waguespack (Director of Finance). Her job title was Accounting Clerk III.

15. In July 2016, President Roussel and Director Waguespack signed paperwork designating Brignac as an Essential Employee in the Finance Department of St. James Parish.

16. On or around August or September 2016, the District Attorney's office for the 23rd Judicial District of Louisiana (the "DA's office") summoned Brignac to a meeting in Donaldsonville, Louisiana where she was questioned by an Assistant District Attorney and an Investigator about certain actions of Poche and Roussel that may constitute malfeasance in office.

17. On September 26, 2016, an investigator with the DA's office came to the Finance Department office on the third floor of the St. James Parish Courthouse and served Brignac with a subpoena commanding her to appear before a grand jury regarding the conduct of Roussel, Poche, and Blaise Gravois ("Gravois"), the Parish's Director of Operations.

18. The subpoena indicated the grand jury would be convening on the third floor of the St. James Parish Courthouse down the hallway and right around the corner from the Finance Department office. The subpoena indicated that Brignac was

commanded to appear before the grand jury the following day on September 27, 2016 at noon.

19. Other Parish employees received subpoenas to testify before the grand jury.

20. After grand jury subpoenas had been served on Brignac and other employees, on September 26, 2016, Waguespack called an emergency meeting.

21. During the meeting, Waguespack warned employees in her department that they were bound by an Executive Order of the Parish President Roussel concerning confidentiality, that they were not to disclose or divulge any information regarding Parish employees, and that such disclosure could result in disciplinary action and possible termination of employment.

22. On information and belief, Defendants called this meeting to dissuade, intimidate, and threaten Brignac and other employees regarding supplying truthful grand jury testimony.

23. The following day, Brignac went to the offices of Poche and Waguespack, which at the time were across the hall from each other, and spoke to both Poche and Waguespack about her need to leave the Finance Department offices during work hours to testify before the grand jury. Both Poche and Waguespack were aware Brignac was testifying before the grand jury that day.

24. Brignac further observed Poche and Waguespack gathering Finance Department records for the grand jury proceeding.

25. On September 27, 2016, Brignac testified under oath before the grand jury.

26. The following day on September 28, 2016, the grand jury indicted Roussel, Poche, and Gravois.

27. Thereafter, Parish employees began warning Brignac that Poche and Roussel were looking for ways to discipline and write her up because of her grand jury testimony.

28. After her grand jury testimony, Brignac noticed an immediate change in the demeanor of Roussel, Poche, and Waguespack. Roussel refused to speak to Brignac, and Waguespack and Poche, the heads of Brignac's department, began a campaign of increased scrutiny, verbal criticism, and write-ups, culminating with her termination.

29. After the indictments were issued, Poche and Waguespack subjected Brignac to heightened scrutiny and criticism regarding her work. As just one example, prior to the indictments, Brignac was permitted to ask employees in other departments to confirm the date on an expense report; after the indictments issued, Poche and Waguespack required Brignac to go through them to ask another employee a question. Other Finance Department employees were treated differently and permitted to talk to whomever the wanted.

30. In addition, Brignac could not copy Waguespack on an email or render assistance to other employees, whereas before the indictments, Brignac was permitted to do these things.

31. In December 2016, defendants Poche and Waguespack issued Brignac a written warning regarding two social media posts Brignac made on her personal cell phone during a lunch break and a break time concerning her gravely ill son. Other employees routinely made social media posts at work and were not disciplined. During

her meeting with Poche and Waguespack, Brignac told them that she believed she was being unfairly singled out.

32.     After the December 2016 write-up, Poche and Waguespack continued to micromanage and criticize Plaintiff's work.  In a meeting in Poche's office in the spring of 2017, Brignac complained, among other things, that unlike other Finance Department employees, only she had to obtain permission to request information from other Parish employees, which interfered with her ability to do her job.  Brignac told Poche and Waguespack that she believed she was being singled out because she testified before the grand jury.

33.     On June 23, 2017, Brignac received another write up, this time for using the phone on her work desk for 40 minutes per day and for helping another employee with a spreadsheet.  As part of this write-up, Defendants suspended Brignac for one day.

34.     The vast majority of Brignac's phone calls were work-related.  Other employees routinely made personal phone calls at work and were not disciplined.  Prior to the indictments, Brignac was permitted to assist other employees and was never scrutinized for her telephone use.

35.     Count 1 of Poche's two-count bill of indictment states that "while acting as the Assistant Financial Director [she] misappropriated, misapplied, converted, misused and/or otherwise wrongfully used a Parish cell phone . . . for personal use and/or loaned [it] to a non-government individual and for which excessive personal cell phone calls were made, and excessive data fees incurred and charged to the Parish of St. James in excess of seven hundred and 00/100 ($700.00) dollars in violation of La. R.S. 42:1461 . .

. ." On information and belief, neither Roussel, Waguespack, nor anyone else, wrote up or in any way disciplined Poche for this conduct.

36. While Poche's alleged misuse and/or conversion of a Parish cell phone was of no concern to Defendants, Brignac's phone calls at work merited special scrutiny after she testified before the grand jury. Poche continues to work at the Parish as Assistant Director of Finance, despite the allegations against her. In contrast to Plaintiff, not a single indicted Parish employee (Roussel, Gravois, and Poche) has been discharged from employment with the Parish, despite the allegations against them.

37. In July 2017, Brignac met with Libby Hotard ("Hotard"), Parish Personnel Manager, on the second floor of the St. James Parish Courthouse and voiced her concern about the meritless write-ups and increased scrutiny and verbal criticism by Defendants. Brignac told Hotard that she believed she was being retaliated against for her grand jury testimony by two of the indicted Parish officials, namely Roussel and Poche. She also told Hotard that she was protected as a whistleblower from retaliation.

38. Despite her complaint to Hotard, Defendants' retaliatory conduct continued. Poche and Waguespack continued to subject Brignac to heightened scrutiny, micromanagement, and criticism regarding her work.

39. On September 19, 2017, Brignac observed Roussel meeting with Waguespack in the Finance Department. Brignac noticed Roussel's presence because Roussel, whose office is on the second floor of the St. James Parish Courthouse, rarely visited the Finance Department offices, which are on the third floor. Roussel's meeting with Waguespack was lengthy.

8

40. The next day on September 20, 2017, Brignac discovered that she had been locked out of the Parish computer system when she arrived at work and attempted to log on. Shortly thereafter, Personnel Manager Rizzuto entered Brignac's office and ordered her to go downstairs to the second floor for a meeting. When Brignac, rose from her chair and slung her purse over her shoulder, Rizzuto aggressively jerked the purse away from Brignac, wrenching Brignac's shoulder in the process. Rizzuto then left Brignac's office with Brignac's purse and refused to return it.

41. When Brignac arrived in the Personnel Office, she was directed to a conference room where she met with Waguespack and Rizzuto who told her the Parish was terminating her employment.

42. During the meeting with Waguespack and Rizzuto, Rizzuto stated that Brignac had been observed attending a Parish Council meeting in November 2016 and sitting next to Eric Derocher, the former Emergency Preparedness Director.

43. During the meeting with Waguespack and Rizzuto, Rizzuto told Brignac that she was being fired for asking another employee to type a check that had not been approved by the Parish council, breaking the Parish Home Rule Charter which requires Parish Council approval to issue checks, failure to follow the chain of command, helping another employee with work, and not obtaining pre-approval for overtime. Brignac made it clear to Waguespack and Rizzuto that she was being fired for her grand jury testimony.

44. Each of Defendants' reasons for terminating Brignac's employment was false and/or meritless and pretext for retaliation against Brignac.

45. Despite Brignac's approximately eleven (11) years of service to St. James Parish, after firing Brignac, Defendants opposed Brignac's request for unemployment benefits.

46. An Administrative Law Judge ultimately determined that Brignac was entitled to unemployment benefits as St. James Parish failed to prove any misconduct by Brignac. During the unemployment appeal hearing on December 17, 2017, Waguespack testified under oath that the decision makers in connection with terminating Brignac were: Poche, Waguespack and Rizzuto.

47. Under the Parish Home Rule Charter, Roussel as Parish President has the exclusive power to remove all Parish employees; he may also at his discretion authorize a department head to remove a subordinate employee.

48. The day Brignac and other Parish employees were served with grand jury subpoenas, Waguespack verbally warned Brignac and her co-workers that they were subject to the Parish President's Executive Order requiring confidentiality and that breaking this confidentiality could result in discipline, including termination.

49. Defendants Poche, Waguespack, and Rizzuto all disciplined and directly participated in the termination of Plaintiff's employment.

50. As Parish President, Roussel approves all terminations of Parish employees and, therefore, on information and belief, Roussel approved Brignac's termination. As such, Roussel was the final decision maker with respect to the termination of Plaintiff's employment.

51. In the alternative, Roussel knew that Poche and Waguespack were writing Plaintiff up and ultimately terminating Plaintiff's employment because of her grand jury

10

testimony and failed to stop the unconstitutional actions of his subordinates with deliberate indifference to Plaintiff's constitutional rights.

52. Further in the alternative, Defendants Roussel, Poche, Waguespack, and Rizzuto collectively and/or individually acted as the final decision maker with respect to the termination of Plaintiff's employment.

53. Further in the alternative, the final decision maker Defendant(s) conspired with others to violate Brignac's constitutional rights.

54. Roussel is a policymaker with respect to Parish employees, having issued an Executive Order binding Brignac and her co-workers to confidentiality as a condition of employment. Roussel is also a policymaker because he has the exclusive power to remove Parish employees.

## V. STATEMENT OF THE CLAIM

### RETALIATION IN VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983

55. Plaintiff restates, re-alleges, and re-avers and hereby incorporates by reference any and all allegations of paragraphs 1-54, inclusive herein.

56. The testimony provided by Brignac under oath at the grand jury hearing and predicate speech leading to such testimony was speech protected by the First Amendment.

57. In providing her testimony, Brignac had an independent obligation pursuant to a grand jury subpoena to provide sworn testimony as a citizen, and her testimony was outside the scope of her ordinary job duties and independent of her obligations as a public employee.

58. The content, form, and context of Brignac's First Amendment-protected speech was grand jury testimony relating to a public corruption scandal and was, therefore, speech as a citizen on a matter of public concern.

59. When balancing Brignac's First Amendment rights with the Parish's interest in providing effective public services, there does not exist a countervailing interest of the Parish to control the operation of its workplace by interfering with Brignac's rights.

60. Parish President Roussel's Executive Order 12-1 was improperly used by Parish officials acting under color of law to attempt to restrain Brignac in the exercise of First Amendment rights, culminating in her discharge.

61. Defendants subjected Brignac to a campaign of unwarranted criticism, increased scrutiny, micromanagement, write-ups and ultimately termination of employment in retaliation for exercising her First Amendment rights before the grand jury.

62. Plaintiff's First Amendment-protected speech motivated and/or was the cause of Defendants' adverse employment actions.

63. As a result of Defendants' unlawful conduct, Plaintiff has suffered damages as detailed below.

64. The actions of individual defendants Roussel, Poche, Waguespack, and Rizzuto were conducted with malice or reckless indifference to Plaintiff's federally protected rights.  Accordingly, Plaintiff specifically pleads her right to recover punitive damages against the individual defendants, Roussel, Poche, Waguespack, and Rizzuto.

65. Plaintiff asserts that any alleged justifications given by Defendants to explain their treatment and termination of Plaintiff are pretext for illegal retaliation under federal law.

### A.  No qualified immunity exists for individual defendants.

66. To the extent that the individual defendants herein, namely Roussel, Poche, Waguespack, and Rizzuto, invoke the protection of qualified immunity, such protection is not available in the instant litigation.

67. At the time of the events set forth in this Complaint, the United States Supreme Court had clearly established that it was unlawful to retaliate and/or discriminate against a public employee such as Plaintiff for providing testimony pursuant to a subpoena and under oath.  See *Lane v. Franks*, 134 S.Ct. 2369, 189 L.Ed.2d 312 (2014).

68. A reasonably competent public official should know the law governing his conduct.  See *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S. Ct 2727, 73 L.Ed.2d 396 (1982). As such, a reasonable Parish official would not have believed that retaliating against a Parish employee for testifying before a grand jury was lawful in light of clearly established United States Supreme Court precedent.

69. The relevant constitutional rules on a public employee's subpoenaed testimony were clearly established at the time of the actions giving rise to this lawsuit, and therefore, qualified immunity cannot and does not apply.

### B.    Municipal liability exists for the Parish.

70. The Parish is liable to Brignac for the retaliation she suffered as a result of her grand jury testimony.

71. This liability is derived from evidence that such retaliation represented a policy and/or custom of the Parish by and through the collective actions of the individual Defendants.

72. Individual Defendant Roussel is the Parish President possessing final authority to establish Parish policy with regard to the disciplining and termination of employees. Roussel further has discretion to delegate this policy-making authority to department heads operating under his supervision. Moreover, after receiving grand jury subpoenas and prior to their grand jury testimony, Plaintiff and her co-workers were warned about the Parish President's policy concerning confidentiality pursuant to an Executive Order requiring confidentiality as a term and condition of employment. Accordingly, the individual Defendants are Parish policy and decision makers with authority to act for the Parish in employment decisions.

## VI.  JURY DEMAND

73. Plaintiff herein demands a trial by jury of all issues in this action that may be tried by jury.

## VII.  PRAYER FOR RELIEF

Plaintiff respectfully prays for judgment against Defendants as follows:

a. Award Plaintiff all earnings she did not receive because of the actions of Defendant, including but not limited to back pay, front pay, bonuses, pension, and any other lost benefits;

b. Award Plaintiff compensatory damages for pain and suffering, emotional distress, mental anguish, loss of reputation, embarrassment, and humiliation, as well as any out-of-pocket expenses;

c.  Award Plaintiff punitive damages against the individual Defendants (Roussel, Poche, Waguespack and Rizzuto);

d.  Award Plaintiff costs, expert witness fees, attorneys fees and pre- and post-judgment interest;

g.  Award Plaintiff equitable relief, including but not limited to ordering appropriate training of Parish employees, cleansing Plaintiff's personnel file of retaliatory write-ups or reviews and/or, alternatively, reinstatement;

f.  Grant Plaintiff any such other and further relief as this Court may deem just and proper.

Respectfully submitted,

*/s/ Robert B. Landry III*
Robert B. Landry III  (#18998)
rlandry@landryfirm.com
**ROBERT B. LANDRY III, PLC**
5420 Corporate Boulevard, Suite 204
Baton Rouge, Louisiana  70808
Telephone:    (225) 349-7460
Facsimile:     (225) 349-7466

**COUNSEL FOR PLAINTIFF,
DORIS BRIGNAC**